In re MAKO, INC., Debtor.

**RETAIL MARKETING COMPANY, Plaintiff,**

v.

**NORTHWEST NATIONAL BANK and Jim Treat, Defendants.**

**NORTHWEST NATIONAL BANK, Counter–Claimant,**

v.

**RETAIL MARKETING COMPANY, Counter–Defendant.**

**Bankruptcy No. 88–70475. Adv. No. 90–7011.**

United States Bankruptcy Court, E.D. Oklahoma.

Sept. 5, 1990.

Thomas A. Creekmore, III, Tulsa, Okl., for plaintiff.

E. Lamar Pettus, Fayetteville, Ark., for Northwest Nat. Bank.

## ORDER

JAMES E. RYAN, Chief Judge.

On this 4th day of September, 1990, the Motion for Summary Judgment and Brief in Support filed by the Defendant, Northwest National Bank, (Docket Entries No. 26 and 27 respectively), Defendant's Amendment to Brief in Support of Motion for Summary Judgment (Docket Entry No. 32) and the Response and Objection of the Plaintiff, Retail Marketing Company, to Defendant Northwest National Bank's Motion for Summary Judgment and Retail Marketing Company's Motion for Partial Summary Judgment and Brief in Support Thereof (Docket Entry No. 34) with a Supplement to Retail Marketing Company's Motion for Summary Judgment (Docket Entry No. 37), as well as the Response and Objection of the Defendant, Northwest National Bank of Fayetteville, Arkansas, to the Plaintiff, Retail Marketing Company, Inc.'s, Motion for Partial Summary with Brief in Support (Docket Entries No. 40 and 41 respectively) came before this Court for consideration.

After an extensive review of the Briefs filed in this matter, the Chapter 11 Plan confirmed in the bankruptcy case to which this adversary proceeding is associated, and the applicable law, this Court does hereby enter the following Findings of Fact and Conclusions of Law in conformity with B.R. 7052 in this core proceeding:

## ISSUES

The Motion and Response address various issues with regard to the merits of the Complaint. However, we find that a more fundamental question exists as to whether RMC is a proper party in interest in this adversary proceeding. As a result, the crucial issues to be resolved by this Order may be summarized as follows:

(a) whether the confirmed Chapter 11 Plan in this case is ambiguous on its face;

(b) whether the terms of the confirmed Chapter 11 Plan in this case are sufficiently certain to have retained avoidance actions;

(c) whether the Plan properly appoints RMC as a representative of the estate;

(d) whether the Plan properly appoints the Litigation Trustee as a representative of the estate.

## FINDINGS OF FACT

1. On June 2, 1989, this Court confirmed the Plan proposed by Delaware County Bank, a creditor of the former bankruptcy estate, on behalf of RMC. RMC was neither affiliated with the Debtor nor a creditor of the estate, but rather under the Chapter 11 Plan ("Plan") purchased the assets of the Debtor corporation, assumed the priority and secured debt of the Debtor and utilized the long term payout provisions of the United States Bankruptcy Code to satisfy these creditors.

2. Upon Court inquiry at the hearing to consider confirmation of RMC's Plan, the Debtor was unable to provide the precise amount owed to administrative claimants. Although this Court had, without recognized authority, established an administrative claims bar date, additional administrative expenses were incurred by the Debtor and thus uncertainty as to the amount owed to these claimants resulted. Aware of the requirement of 11 U.S.C. § 1129(a)(9)(A) that all administrative claims be satisfied prior to a Plan becoming effective, this Court solicited an averment from RMC that all administrative claims would be paid, regardless of the final tally.

RMC specifically stated that the administrative claims would be paid, *whatever the amount.* As stated by RMC, it was willing to do "whatever it takes" to obtain confirmation. Based upon this averment by RMC, as well as a finding of compliance with 11 U.S.C. § 1123(a) and § 1129(a), (b) and (c), less subsection (a)(8), RMC's Plan was confirmed.

The Plan created two offices to effectuate its terms. The Liquidating Trustee was established to accept all assets of the estate and transfer these assets to RMC. The Liquidating Trustee also received from RMC the proceeds necessary to satisfy the Debtor's administrative claims and distributed said proceeds to these claimants. The Liquidating Trustee filed his Final Report and Account and Motion for Determination that all Class 1 Claims (i.e., administrative claims) Had Been Paid and Application for Final Decree and Discharge on September 21, 1989. This Final Report was approved by the Court on October 20, 1989. Subsequently, on February 5, 1990, the Liquidating Trustee filed a Supplement to the Final Report and Accounting and Application for Final Decree. This Supplement was approved on March 8, 1990. As a result, the Liquidating Trustee was discharged and his bond exonerated on this date. By that time, all assets had been transferred and the payments under the Plan had commenced. As a result, the Plan has been "substantially consummated," as that term is defined under 11 U.S.C. § 1101(2), realized in fact if not in formal pleadings in the file.

The Plan also created the office of the Litigation Trustee. This office was established to pursue certain limited adversarial actions. Specifically, the Plan states, in pertinent part, at paragraph 6.04:

> On the effective date, the Liquidating Trustee shall be deemed to have conveyed the assets described on the attached Exhibit "G" to Jack H. Santee, who shall act as the "Litigation Trustee" on behalf of all unsecured creditors, under such terms (including terms regarding his compensation and the compensation of any professionals employed by him) as may be approved by the Court. Under no circumstances shall the Litigation Trustee be required to investigate, or prosecute any of the causes of actions described on Exhibit "G," or seek to satisfy any judgments obtained in any such actions, unless and until one or more unsecured creditors shall have provided funding to the Litigation Trustee for such purposes. With Court approval, the Litigation Trustee may agree to return any such advance funding by an unsecured creditor to the party or parties so advancing from the proceeds of any judgments obtained or settlements reached in any of the subject litigation. The Court shall retain jurisdiction to provide instructions, if necessary, to the Litigation Trustee with regard to the discharge of his duties hereunder. All sums recovered by the Litigation Trustee on behalf of the unsecured creditors, after paying the reasonable expenses of the Litigation Trustee and his professionals, and compensating any unsecured creditor(s) who provide advance funding of the costs of such litigation, shall be distributed by the Litigation Trustee, upon direction of the Court, in accordance with the distribution priority established in Article V, provided that Litigation Trustee shall not be obligated to make a pro rata distribution to the holders of Class 23 claims (unsecured claims) if the Litigation Trustee determines that the cost to make such distribution exceeds the amount held by the Litigation Trustee to be distributed. In such case, the Litigation Trustee shall seek instruction from the Court as to the proper disposition of such proceeds. Any litigation thus pursued by the Litigation Trustee shall be at the sole cost and expense of the holders of Class 23 claims (unsecured claims), and no further administrative claims shall be assessed against the assets to be acquired by RMC hereunder as a result hereof. (bracketed information added by Court)

The specific causes of action which the Litigation Trustee is empowered to pursue

are found at Exhibit G of the Plan. These actions are limited to:

> The following claims and/or causes of actions ... to be assigned to the Litigation Trustee, excluding any potential preference avoidance actions against Marvin Morse and/or the firm of Morse & Sexton.
>
> (a) Adversary Case No. 88–0054, against Gerald and Phyllis Bivens.
>
> (b) Adversary Case No. 88–0079, against Michael Treat, for turnover of property.
>
> (c) Adversary Case No. 88–0074, against Jim Treat, for turnover of property.
>
> (d) Any and all claims against insiders or affiliates of the Debtor (as defined by the Code), including without limitation Debtor's management, to the extent, but only to the extent, such claims arose on or before March 23, 1989.

None of the actions set forth in paragraphs (a), (b) or (c) found in Exhibit G are currently pending in this Court.

3. The Plan also sets forth RMC's rights regarding further litigation. In particular, the Plan provides at Paragraph 6.01, subparagraph .05 that:

> 6.01. Upon satisfaction of the conditions precedent set forth in Article XI, confirmation will result in: ...
>
> 6.01.05. The assumption by RMC of all of the debtor's rights in pending litigation constituting contested matters or adversary proceedings in this case, and all pending appeals to which debtor or the liquidating trustee is or was a party on the effective date (other than the litigation described on Exhibit "G" hereto) together with the right to prosecute or defend any other such litigation which the debtor or liquidating trustee may have brought on or before the effective date. Without limiting the generality of the foregoing, RMC shall be entitled to prosecute all objections to claims which may exist on the effective date, or any others to which RMC may object in accordance with the plan, and may appear as the real party in inter-

> est in any pending or later instituted contested matter or adversary proceeding filed herein.

Further, the Plan provides that:

> 6.05. ... All claims, rights and causes of action against the insiders, shareholders, officers, directors, management and other personnel of the Debtor arising from and after March 24, 1989 revealed by such audit as a result of any failure of the Debtor to meet its obligations hereunder and under the Code, or otherwise, shall be deemed distributed to RMC on the Effective Date.

4. A fair reading of the Plan provisions indicates to this Court that RMC is not obligated in any way to distribute any proceeds realized from the successful prosecution of this avoidance action to the unsecured creditors of the estate. The Litigation Trustee is the sole party obligated to and authorized to act on behalf of the unsecured creditors of the former bankruptcy estate.

In fact, the Litigation Trustee sought Court approval of an agreement between him and RMC to provide, in part, for the distribution of any proceeds realized from the successful prosecution of the avoidance actions such that the net proceeds are distributed equally between the Litigation Trustee and RMC until $3,000,000 has been disbursed. The amount to be paid to RMC, some $1.5 million, is designated as reimbursement for payment on administrative claims over and above the amount estimated by the Debtor. An Order was entered on August 17, 1990 which denied the Motion for Approval of the Agreement. This ruling was based upon a finding that the agreement represented a substantial alteration or modification of the confirmed Chapter 11 Plan in this case, post-substantial consummation, which is not permitted by the Bankruptcy Code. This agreement further indicates RMC's intent to at least share co-equally in the proceeds derived from this litigation.

5. On February 26, 1990, RMC commenced this adversary proceeding, naming Northwest National Bank and Jim Treat as

party Defendants. The Plaintiff alleges in its Complaint that on or about August 16, 1984, the former Debtor executed five Promissory Notes with the Defendant Northwest which were secured by certain equipment located at the convenience stores owned by the Debtor, as well as by Defendant Treat's personal guarantees on the Notes. Plaintiff further alleges that on or about May 1, 1986, Defendant Treat executed two Notes with Defendant Northwest which were secured by certain equipment and the guarantee of the former Debtor, MAKO, Inc. Plaintiff concludes that certain monies were transferred from the Debtor in payment on these Notes within one year of the filing of the Petition, between May, 1988 and April, 1989. As a result, RMC alleges that these transfers were made in violation of 11 U.S.C. § 544(b), employing the Oklahoma Uniform Fraudulent Transfers Act, § 547 as being preferential, § 548 as being a fraudulent transfer, § 549 with regard to the post-Petition transfers and § 550 for any subsequent transfers. The Complaint designates Defendant Treat as an "insider" as that term is defined under the Bankruptcy Code at 11 U.S.C. § 101(30)(B), having been an officer and stockholder in the Debtor corporation.

6. The Defendant Northwest's Motion for Summary Judgment alleges that RMC, as a purchaser of the assets of the former Debtor, lacks the appropriate standing to bring the avoidance actions for RMC's own benefit. The Motion further asserts that the Plan provisions as written do not properly reserve the avoidance powers found at Chapter 5 of the United States Bankruptcy Code in RMC due to ambiguity in the Plan terms. Finally, Defendant Northwest addresses various issues regarding the merits of the action itself. Subsequently, the Plaintiff dismissed the action as to the allegations surrounding the five Promissory Notes between the former Debtor and Defendant Northwest but maintains the action regarding the two Promissory Notes between Defendant Northwest and Defendant Treat. As a result, the applicability of the Motion for Summary Judgment on the merits as well as the Motion for Partial Summary Judgment filed by the Plaintiff is in question. Therefore, we find that by addressing whether RMC is the proper party in interest to bring this action, it is unnecessary to address the Motion with regard to the merits of the action at this time. We note that this Court has addressed a similar argument in another adversary proceeding currently pending in this Court. See *Retail Marketing Company v. Admire Bank & Trust Company, Jim Treat and William King*, Adv. No. 90–7014. Due to the procedural similarities of these cases, we incorporate herein much of the reasoning set forth in this Court's Order of August 17, 1990 in the other adversary proceeding.

## CONCLUSIONS OF LAW

### A. *Propriety of Summary Judgment.*

The disputes to be resolved by this Order are entirely legal in nature or involve the interpretation of the Chapter 11 Plan confirmed in this case. As a result, we find that there is no genuine issue as to any material fact involved in this adversary proceeding and thus, this Court may determine whether the Defendant is entitled to summary judgment as a matter of law. B.R. 7056.

### B. *Nature of a Chapter 11 Plan of Reorganization/Liquidation.*

A Chapter 11 Plan, whether it is one contemplating reorganization or the liquidation of assets, is nothing more nor less than a contract between a debtor and the creditors of the bankruptcy estate. "In interpreting the terms of a Chapter 11 Plan, the general rules of contractual interpretation are to be applied." *In re Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir.1981); *Eaton v. Courtaulds of North America, Inc.*, 578 F.2d 87 (5th Cir.1978) as cited in *In re Amarex, Inc.*, 96 B.R. 330, 332–33 (Bankr.W.D.Okla.1989). For a contract to be enforceable, it must be sufficiently certain to define the nature and extent of the parties' obligations. *Willowood Condominium Association, Inc. v. HNC Realty Company*, 531 F.2d 1249 (5th

Cir.1976). This analysis, however, must also take into account that, if possible, all terms of the contract are to be given effect. *Board of Regents of Oklahoma Colleges v. Walter Nashert & Sons, Inc.,* 456 P.2d 524 (Okl.1969).

A Chapter 11 Plan, as a contract, must contain considerable specificity and certainty in order for the parties affected by the Plan terms to know their rights and obligations and to allow the Court to interpret the Plan provisions, should it become necessary as it has in this case. Since a Chapter 11 Plan may, and often does, take the place of all prior contracts, mortgages and agreements between the debtor and creditors, the necessity for specificity becomes even more crucial.

The similarities between the requirements for an enforceable contract and the requirements for a confirmed Chapter 11 Plan are manifested in the confirmation process. First, the Plan proponent must negotiate with his creditors prior to offering the Plan in order to formulate its terms. Second, the Plan proponent offers the proposed Plan/contract to the creditors of the estate for acceptance. Third, the confirmation process allows the Court to evaluate the proposed Plan under the guidelines and constraints of the United States Bankruptcy Code; specifically, those provisions found at 11 U.S.C. § 1123 and § 1129. Under § 1123(a), the proposed Plan is required to contain certain mandatory provisions, without which the Plan is not confirmable. A Plan *may* contain certain permissive provisions found at 11 U.S.C. § 1123(b). Thus, Congress has *required* certain contractual provisions, for various reasons of equity, while *allowing* others.

Further, the Court must find compliance with 11 U.S.C. § 1129(a), with the exception of subsection (a)(8), for a Plan to be approved or confirmed by the Court. If necessary, the confirmation process allows for a Court imposed contract under certain circumstances; namely, when the treatment of a creditor in a Plan is determined to be "fair and equitable" even though a class whose rights are impaired under said Plan

does not vote for its acceptance. In this light, Court approval serves as a substitute for the mutuality of consideration required in normal contracts.

■ Should any uncertainty or ambiguity result from the Plan, as with a contract, the provision should be interpreted most strongly against the party who caused the uncertainty to exist. *Premier Resources Ltd. v. Northern Natural Gas Company,* 616 F.2d 1171 (10th Cir.1980). Analyzing the disputed Plan provisions under the precepts of contractual interpretation, we find the provision of the Plan giving rise to RMC's right to prosecute further litigation is ambiguous in its attempt to establish the precise actions in which RMC is preserving its position. The language of the Plan conveys "... the right to prosecute or defend any other such litigation which the Debtor or Liquidating Trustee may have brought on or before the effective date." This language is ambiguous in its form. The language can be interpreted to mean that only actions pending on the effective date are truly retained under the Plan, with RMC assuming the position of the Debtor or the Liquidating Trustee at that time and not preserving any right in RMC to initiate litigation on its own accord. This particular interpretation does not render the provisions ineffective but it does demonstrate the inherent ambiguity in these terms of the Plan and, based on contractual interpretation, does not grant RMC the ability to prosecute the instant avoidance action since it was not pending on the effective date. RMC and the Litigation Trustee recognize some ambiguity in the Plan since they characterized the proposed agreement for which Court approval was sought by separate Motion as an effort to "clarify" the Plan terms.

Interpreting this term against RMC as the party to the Plan/contract responsible for the ambiguity, this action cannot stand with RMC as the party Plaintiff.

■ RMC also challenges any attempt to dispute the Plan terms at this time, since no objections to these terms were lodged at Plan confirmation. However, a Plan or a contract is not subject to interpretation un-

til a party to the Plan or contract attempts to enforce its rights and a conflict arises. As a result, we find that any challenge to the Plan terms is a question of interpretation rather than an objection which is foreclosed by confirmation of the Plan.

### C. *Retention and Reservation of the Avoidance Actions in RMC.*

The ability of a party to enforce a claim once held by the bankruptcy estate is limited to that which is retained under the terms of a confirmed Chapter 11 Plan. Specifically, the Bankruptcy Code at 11 U.S.C. § 1123(b)(3)(B) provides:

*Subject to subsection (a) of this section, a plan may—*

*(3) provide for—*

*(B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any ... claim or interest.*

■ Thus, under this section, "a party who is neither the debtor nor the trustee but who seeks to enforce a claim must establish two elements: (1) that it has been appointed; (2) that it is a representative of the estate." *In re Amarex, Inc.,* supra at p. 334. Since RMC is neither the debtor nor a trustee in this action, it must satisfy these requirements in order to further pursue this avoidance action.

With regard to the first element, we agree with the Courts that have "relied upon the express provisions of plans of reorganization that confer the right to bring particular kinds of actions on a particular party in concluding that the party has been appointed for section 1123 purposes." *In re Amarex,* supra at p. 334 citing *In re Tennessee Wheel and Rubber Co.,* 64 B.R. 721, 723–26 (Bankr.M.D.Tenn. 1986); *In re Xonics,* 63 B.R. 785, 786–88 (Bankr.N.D.Ill.1986). An appointment made pursuant to § 1123(b)(3)(B) becomes effective upon confirmation since the creditors have an opportunity to object to the appointment and the Court has the opportunity to approve the appointment at that time. See *In re Sweetwater,* 884 F.2d 1323, 1326 (10th Cir.1989).

■ In the instant case, the provision of the Plan which ostensibly appoints RMC to enforce potential avoidance claims (paragraph 6.01 subparagraph .05 of the Plan) is not sufficiently specific for this Court to find that RMC has been vested with the avoidance powers. Under the Plan, RMC assumes the debtor's rights in pending litigation as well as "the right to prosecute or defend any other such litigation" and further provides that RMC "may appear as the real party in interest in any pending or later instituted contested or adversary proceeding filed herein". The vast majority of the courts which have faced this issue have required and found under the particular facts before them that the avoidance powers and the right to bring the avoidance actions were retained by the use of specific language in the Plan. See, e.g., *In re Amarex, Inc.,* supra; *In re Tennessee Wheel & Rubber Company,* supra; *In re Kroh Brothers Development Company,* 100 B.R. 487 (Bankr.W.D.Mo.1989). Because the confirmation of a Chapter 11 Plan dissolves the bankruptcy estate and the rights and powers created under the Bankruptcy Code, the retention provision of § 1123(b)(3)(B) requires specific and unequivocal language of reservation. Without this language, the avoidance powers of the Trustee stemming from the Bankruptcy Code at §§ 544, 546, 547, 548, 549 and 550 perish and become unenforceable. As a result, the broad language utilized in RMC's Plan is not sufficient to appoint RMC to prosecute the avoidance actions since we find that the powers themselves were not properly retained.

Although some courts have found creative methods for contorting the provisions of Chapter 11 Plans to find a retention of the avoidance powers, we concur with the cases that require more particularity in the Plan provisions. Compare *In re Centennial Industries, Inc.,* 12 B.R. 99 (Bankr.S.D. N.Y.1981) with *In re Neptune Worldwide Moving, Inc.,* 111 B.R. 457, 463 (Bankr.S.D. N.Y.1990). (The Court in *Centennial* concluded that retention of the right to object to claims post-confirmation was sufficient to find a retention of authority to bring an adversary action seeking recovery of a

preferential transfer. The Court in *Neptune* rejected this position as ignoring the distinction between the Motion practice utilized to object to claims and the required adversarial practice necessary to pursue avoidance actions.)

This Court is not without guidance in this Circuit on this issue. See *In re Sweetwater,* supra. The Tenth Circuit Court of Appeals which binds this Court has found that avoidance claims are also claims of the estate as that term is defined under 11 U.S.C. § 101(4). RMC validly reserved in itself the right to pursue "claims" against insiders, shareholders, officers, directors, management and other personnel of the Debtor arising *after* March 24, 1989, while reserving the enforcement of "claims" against these same parties arising *before* March 24, 1989 in the Litigation Trustee. In the instant case, the transfers sought to be avoided occurred between May, 1988 and April, 1989. Due to the lack of specificity expressed in the Complaint as to the precise dates the transfers occurred, and since Mr. Treat is undoubtedly an "insider," this action may have been reserved in either RMC or the Litigation Trustee depending on the date of transfer.

Although arguably the first element of § 1123(b)(3)(B) has been satisfied by RMC, we find that the second has not.

The second element of § 1123(b)(3)(B) requires that RMC be a representative of the estate in order to enforce the avoidance actions. A "case-by-case approach to determine whether a particular party seeking to enforce a claim is a 'representative of the estate'" is generally adopted when examining the presence of this element. See *In re Tennessee Wheel & Rubber Company,* supra at p. 725. Paramount consideration is given to whether recovery on a particular retained action will result in a benefit to the creditors of the estate, and more specifically, the unsecured creditors of the former bankruptcy estate. See *In re Amarex, Inc.,* supra at p. 334 citing *In re Tennessee Wheel & Rubber Company,* supra at p. 725.

RMC's Plan does not contain any provision which would provide for a benefit to the unsecured creditors of the estate should a successful recovery be realized from the prosecution of the avoidance actions by RMC. From a clear reading of the Plan, it would appear that the sole beneficiary of the successful prosection of the avoidance actions would be RMC. The avoidance powers found in Chapter 5 of the Bankruptcy Code as well as the provision for their retention at § 1123(b)(3)(B) are clearly intended to benefit creditors of the estate and not the Plan proponent. All of the entities named under § 1123(b)(3)(B), whether they be the Debtor, Trustee or a representative of the estate, have as their primary mission benefitting the *creditors* of the estate.

The sole indication of a proposed distribution of proceeds from these avoidance actions is found in the agreement between the Litigation Trustee and RMC for which Court approval was sought by Motion filed May 25, 1990. The agreement contains provisions well outside the scope of the language of the confirmed Plan in this case. Under that agreement, RMC would retain $1.5 million of the net proceeds realized from the successful prosecution of the avoidance actions in compensation for the amount paid toward administrative expenses over and above that provided in the Plan. Although RMC states without authority that it is subrogated to the administrative claimants representing that amount over and above the amount set forth under the Plan, we cannot agree. At the Confirmation Hearing, RMC was aware that the amount of the administrative claims was a "floating figure" subject to increase post-confirmation; yet, RMC agreed to pay these claims, *whatever the final amount might result.* Without these assurances from RMC, the Plan could not have become effective and thus, the Plan would not have been confirmed. 11 U.S.C. § 1129(a)(9)(A).

RMC asserts that under the authority of *In re Sweetwater,* supra, RMC is indirectly benefitting the unsecured creditors of the estate. In that case, the Tenth Circuit found that a payment to administrative claimants represented a benefit to the unsecured creditors since it would increase the potential for payment to the unsecured class. But, since RMC is not an administrative claimant, any benefit derived by it

does not translate into a benefit to the unsecured creditors. Without such a benefit, RMC cannot stand as a representative of the estate.

The "generous" agreement between the Litigation Trustee and RMC for which Court approval was sought does not cure the inherent defect in the Plan provisions for providing a benefit to the unsecured creditors. For a party to be a true "representative of the estate" *any and all* proceeds realized from the prosecution of the avoidance actions must be paid to the creditors of the estate, whether they be administrative or unsecured in status. RMC fails to so provide under the Plan or the Agreement.

In summary, the Tenth Circuit Court of Appeals has determined that post-confirmation retention and enforcement of Chapter 5 avoidance actions is permissible in a Chapter 11 Plan so long as the Debtor, Trustee or a properly appointed representative enforces the actions and any benefit derived from the actions is conferred upon the creditors of the estate. RMC has failed to satisfy these requirements.

D. *Retention and Reservation of the Avoidance Actions in the Litigation Trustee.*

██ While clearly the retention and enforcement of the avoidance actions was not vested in RMC, the same finding is not as clear with regard to the Litigation Trustee. The Confirmed Plan at Exhibit "G" provides for the *assignment* of certain claims to the Litigation Trustee. The assignment of the avoidance powers by express language has created some controversy. "The assignability of bankruptcy avoidance powers is a difficult and disputed question. Courts have held such actions to be non-assignable at least since 1909. See *Belding–Hall Manufacturing Company v. Mercer and Ferdon Lumber Company*, 175 F. 335 (6th Cir.1909). The enactment of 11 U.S.C. § 1123(b)(3) arguably disrupts the settled prior case law." *In re Tennessee Wheel & Rubber Co.*, supra at p. 724. When faced with this question in the *Sweetwater* case, the Tenth Circuit Court of Appeals found that so long as the assignee qualifies as a "representative of the estate" the assign-

ment was not for a party's own self interest, but rather for the benefit of another, and thus the intended function of § 1123(b)(3)(B) is served. Clearly, the Litigation Trustee was properly appointed under the Plan and any recovery realized from the avoidance actions pursued by the Litigation Trustee would benefit the unsecured creditors. As a result, the Litigation Trustee is a proper representative of the estate.

The Litigation Trustee, however, does not have an unfettered right to pursue any avoidance action. The three specific actions that were reserved in the Litigation Trustee and set forth in the Plan have reached final resolution and are no longer of consequence. The Litigation Trustee is also empowered, however, to pursue "claims" against insiders and affiliates of the Debtor. Since the Tenth Circuit has found that the reservation of "claims" is sufficient to retain the avoidance powers, we must find that any avoidance actions against "affiliates" or "insiders" of the Debtor, having arisen before March 23, 1989, as those terms are defined under 11 U.S.C. § 101(2) and (30), are properly retained in the Litigation Trustee. The Litigation Trustee, of course, is subject to the time limitation set forth at 11 U.S.C. § 546(a)(2).

In the instant case, Defendant Jim Treat is undoubtedly an "insider" and thus the Litigation Trustee is potentially a proper party in interest in this action.

We recognize the argument asserted by RMC regarding B.R. 7017 incorporating Rule 17, Fed.R.Civ.P., which states, in pertinent part, at Paragraph (a): "... no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." The purpose for this Rule is to enable the Defendant to present defenses he has against the real party in interest, to protect the Defendant against a subsequent action by

the party actually entitled to relief and to ensure that the judgment will have proper res judicata effect. *Virginia Electric & Power Co. v. Westinghouse Electric Corporation*, 485 F.2d 78 (4th Cir.1973).

As a result, the Litigation Trustee will be afforded a period of time to be substituted in this action.

### E. *The Responsibilities of the Unsecured Creditors' Committee.*

■ An Unsecured Creditors' Committee was duly appointed by the United States Trustee in this case to represent the interests of the unsecured creditor class pursuant to 11 U.S.C. § 1102(a)(1). A review of the legislative history associated with the Bankruptcy Code provides insight as to the intended function of creditors' committees. Congress provided that "much of the negotiation that occurs between creditors and the debtor in a reorganization case is carried on through committees of creditors. These committees are designed to deal with the debtor in a more manageable way than the entire body of creditors could. They are representative bodies that must speak for groups of creditors with similar interests." H.R.Rep. No. 595, 95th Cong., 1st Sess. 220–261 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Thus, the Unsecured Creditors' Committee is intended to make the unmanageable communication between the debtor and the multitude of unsecured creditors in a case manageable. The creditors' committee is intended to be integrally involved in the formulation of a Chapter 11 Plan which will optimize the return to the class. As a result, the committee, in this Court's view, is not a perfunctory or useless body, simply appointed to satisfy a formality established by the Bankruptcy Code, but rather should be a vital and integral part of the Plan formulation process.

In the case at bar, the "functioning" Unsecured Creditors' Committee sought and obtained Court approval for the appointment of counsel. Indeed, the members of the committee who participated in the case were represented by counsel. Thus, the Committee had available to it the necessary legal skill to make informed decisions.

The responsibility for any reduced recovery by the unsecured creditors which may result due to the limited reservation in the Litigation Trustee lies squarely on the shoulders of the Unsecured Creditors' Committee. The Litigation Trustee, who is a former member of the Unsecured Creditors' Committee, admitted at the hearing that the Committee knew of the existence of potential avoidance actions. And yet, the Committee did not insist upon the clear and appropriate language in the Plan to retain these actions in a properly appointed representative of the estate. The Unsecured Creditors' Committee possesses the necessary powers to investigate the existence of avoidance actions to the extent necessary to insist upon the retention of all such actions. The failure of the Plan proponent to acquiesce in this demand by the unsecured creditors represents a potential objection to a proposed Plan, since a liquidation value must be determined at Plan confirmation to demonstrate that the unsecured creditors are receiving more under the proposed Plan than under a liquidation under Chapter 7 of the United States Bankruptcy Code. See 11 U.S.C. § 1129(a)(7)(A)(ii). Since the unsecured creditors received nothing under the confirmed Plan as they would have under a Chapter 7, the Plan was confirmable. There is no indication that RMC would have refused to include a proper retention of all avoidance actions in the Plan for the Litigation Trustee. At the same time, however, RMC was under no *obligation* to do so. In fact, a strong indication exists that RMC did not know of the existence of particular avoidance actions at the time of confirmation.

The Litigation Trustee, as a former member of the Unsecured Creditors' Committee, stated in the defense of the members of the Creditors' Committee that the Committee was "loaded" with a majority of former insider "cronies," thus preventing the innocent members from pursuing the avoidance actions. The Bankruptcy Code insists that representation on a Creditors' Committee be "fairly chosen and is representative of the different kinds of claims to be represented." 11 U.S.C. § 1102(b)(1). In fact, the legislative history of this section re-

veals that "in order to insure that the committees are fairly representative and not solely controlled by attorneys seeking the counsel position (and presumably members of the committee with a personal agenda), the bill requires that committees be appointed by the Court. Normally, committees will consist of the holders of the seven largest claims or interests to be represented. However, the bill also permits the Court to continue a meeting selected before the case by the represented group if the committee was fairly chosen and is representative. Finally, the Court is authorized to change the number of members or the members of the committee in order to insure that the committee is representative." (bracketed information added by Court) H.R.Rep. 595, 95th Cong., 1st Sess. 220–261 (1977). The responsibility for the formulation, composition and monitoring of the committees was passed to the United States Trustee by the 1986 amendments to the Code. In fact,

> "each United States Trustee, within the region for which such United States Trustee is appointed, shall—
> (3) supervise the administration of cases and trustees in cases under Chapter 7, 11 or 13 of Title 11 by, whenever the United States Trustee considers it to be appropriate— ...
> (E) monitoring creditors' committees appointed under Title 11."
> 28 U.S.C. § 586(a)(3)(E).

As a result, since neither the United States Trustee nor the "innocent" members of the Unsecured Creditors' Committee saw fit to bring any allegations of "cronyism" in the composition of the Unsecured Creditors' Committee before the Court, the problem, if it existed, was never rectified. The tools which Congress provided are only effective when those for whose benefit they were created and whose responsibility they are to enforce act in accordance with their duties.

### F. Conclusion.

In summary, this Court's ruling is an attempt to lend dignity to the confirmation process, to a Chapter 11 Plan as a contract and the precise terms required for that contract to be effective. The standards which have been established for proper res-

ervation of the unique Bankruptcy powers serves only to affirm the compelling thread which must run through all bankruptcy proceedings—to benefit the creditors of the bankruptcy estate, while affording the debtor his due chance at starting anew. However, a well-represented class possesses the fate of its own destiny by becoming an active player in the process.

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment filed by Defendant Northwest National Bank is hereby granted. As a result, RMC is dismissed as a party Plaintiff to this action.

**IT IS FURTHER ORDERED** that by separate Notice, the Litigation Trustee be notified of his option to file a Motion to Substitute as Party Plaintiff in this adversary action against all Defendants. The Notice shall allow ten (10) days from the entry of the Notice to file said Motion. Failure to timely submit the Motion shall result in the immediate dismissal of this action in its entirety.