**In re the FONDA GROUP, INC., Debtor.**

**The FONDA GROUP, INC., Plaintiff,**

v.

**CONTEMPORARY PACKAGING CORPORATION, Defendant.**

**Bankruptcy No. 88–00880.
Adv. No. 89–0172.**

United States Bankruptcy Court, D. New Jersey.

Sept. 29, 1989.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime by Kenneth A. Rosen, Roseland, N.J., for Fonda Group, Inc.

Crummy, Del Deo, Dolan, Griffinger & Vecchione by Geraldine E. Ponto, Newark, N.J., for Contemporary Packaging Corp.

## OPINION

DANIEL J. MOORE, Bankruptcy Judge.

Contemporary Packaging Corporation ("Contemporary" or "Movant"), defendant in the adversary proceeding herein, pursuant to Bankruptcy Rule ("BR") 7056, has moved to dismiss the adversary complaint filed by the Fonda Group, Inc. ("Fonda" or "Debtor"). The complaint seeks to avoid as preferential transfers, pursuant to the provisions of 11 United States Code ("U.S.C.") §§ 547(b) and 550 ("Avoiding Powers"), payments made by Fonda to Contemporary during the ninety day period immediately preceding the date that Fonda filed its bankruptcy petition. The matter is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 157 and the Standing Order of Reference entered on July 23, 1984 by the New Jersey District Court. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to BR 7052.

\* \* \* \* \* \*

On November 5, 1986 Contemporary voluntarily filed a chapter 11 bankruptcy petition in the Eastern District of New York and thereafter continued in operation of its business as a debtor in possession ("DIP"), pursuant to the terms and provisions contained in 11 U.S.C. §§ 1107 and 1108. On February 11, 1988 Fonda filed its voluntary chapter 11 bankruptcy petition and continued in operation of its business as a DIP. On April 13, 1988 an Order was entered authorizing the Debtor to enter into and perform obligations under certain agreements with Four M Corporation.[1] On April 18, 1988 an Order was entered authorizing the retention of the accounting firm of Ernst & Whinney, C.P.A.'s. On April 18, 1988 Contemporary timely filed a proof of claim in the Fonda bankruptcy proceeding in the amount of $27,540.55. On April 21, 1988 the Reorganized Debtor filed its Statement of Financial Affairs and in the Schedule of Assets and Liabilities listed Contemporary as an unsecured, non-priority creditor, holding a claim in the amount of $25,672.41. On May 26, 1988 Contemporary's Plan of Reorganization was confirmed by the United States Bankruptcy Court for the Eastern District of New York. On August 10, 1988 this Court confirmed Fonda's Plan of Reorganization. On September 9, 1988 the Reorganized Debtor sought and was granted an extension of time to file objections to claims until October 7, 1988. On September 29, 1988 the Reorganized Debtor filed its First Omnibus Application to reduce and/or expunge claims. On October 24, 1988 a hearing was conducted on the application and on November 4, 1988 an Order was entered reducing and/or expunging claims, one of which was Contemporary's which was reduced from $27,540.55 to $25,672.41. On February 15, 1989, Reorganized Fonda instituted the instant adversary proceeding

---

1. These agreements provided for financing and the Plan of Reorganization eventually confirmed in the Fonda case.

and seeking to recover $107,730.99 [2] in alleged preferential transfers made by Fonda to Contemporary within the applicable ninety (90) day preference period provided for in 11 U.S.C. § 547(b).

## ISSUES PRESENTED

Movant argues that as a matter of law, dismissal of the Reorganized Fonda adversary complaint is warranted since, first, Fonda's right to commence preference litigation became vested on February 11, 1988 when it filed its petition, and its failure to initiate preference litigation between the period in time that Fonda filed its petition, February 11, 1988, and the date Contemporary confirmed its reorganization plan, May 26, 1988, bars commencement of the present adversary action since (a) Contemporary was discharged of the debt because it arose prior to confirmation of its plan, 11 U.S.C. § 1141(d)(1), and as such (b) there exists an injunction with respect to commencement or continuation of the action, 11 U.S.C. § 524(a)(2); and second, that the concept of res judicata bars the subsequent litigation of these claims as do the Doctrines of Equitable and Judicial Estoppel because its claim was contested and because Fonda's Disclosure Statement and Plan did not disclose the preference claim against movant.

Reorganized Fonda asserts that its preference claim should not have been joined with its objection to Contemporary's proof of claim, that the preference complaint is not barred by 11 U.S.C. §§ 1141(d)(1)(A) or 524(a)(2) as it did not have notice of Contemporary's bankruptcy proceeding and that Fonda's Plan and Disclosure Statement disclosed the potential preference action.

## PREFERENCE COMPLAINT ENJOINED BY OPERATION OF LAW PURSUANT TO 11 U.S.C. §§ 1141(d)(1)(A) and 524(a)(2) BY VIRTUE OF CONTEMPORARY'S DISCHARGE OF DEBTS THROUGH PLAN CONFIRMATION

Movant cites two statutory provisions of the Bankruptcy Code [11 U.S.C. § 101 et seq.] to support its position namely, 11 U.S.C. §§ 1141(d)(1)(A) and 524(a)(2). Section 1141 provides in pertinent part that:

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—

(i) a proof of claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

Section 524 states in relevant part:

(a) A discharge in a case under this title—

\* \* \* \* \* \*

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

Neither party has brought to the attention of the Court, nor has research as yet found any reported case that discusses the conflict or potential therefore between the two major policy concerns of the Bankruptcy Code that appear to meet head on in this case. On the one hand the policy of granting to a debtor a fresh start as embodied in the provisions of the Code relied upon by movant, specifically § 1141 and § 524 of the Code. On the other hand there is the fundamental policy that all creditors of a class be treated equally as embodied in the

---

**2.** Reorganized Fonda's analysis of payments made within ninety days prior to its petition date reflects payments which total $94,194.42.

requirements for confirmation in § 726 and § 1129 of the Code. Indeed it is the policy of equality of treatment that is at the heart of § 547.

Fonda's right to assert Avoiding Powers arose when it filed its bankruptcy petition on February 11, 1988 which was prior to the confirmation date of Contemporary's reorganization plan on May 26, 1988, Contemporary argues that Section 1141(d)(1)(A) discharges Contemporary of these debts since they "arose before the date of confirmation".[3] As a corollary Contemporary's position is that Section 524(a)(2) provides that discharge "operates as an injunction against the commencement or continuation of [this adversary] action". Movant's reasoning is that Reorganized "Fonda's assertion of the right to recover the amount of alleged preferential transfers is the assertion of a 'right to payment' and thus a claim within the meaning of section 101(4)(A) of the Bankruptcy Code" (Contemporary's Memorandum of Law, at 12). Contemporary further argues that as Fonda failed to institute this adversary proceeding prior to the Contemporary plan confirmation date, the result is that the preference claims were discharged and this adversary proceeding is enjoined.

Fundamental to Movant's argument is the premise that the right to avoid preferences under Avoiding Powers itself constitutes "a right to payment". Although the preference cause of action is created on the date the petition is filed, whether an actual claim or right to payment exists is not so determined. The Third Circuit acknowledged Congress' intention to expansively interpret the term "claim" in enacting the 1978 Bankruptcy Code in the case of *In re Frenville*, 744 F.2d 332 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), wherein it stated "the existence of a valid claim depends on: (1) whether the claimant possessed a right to payment; and when that right arose." *Id.* 744 F.2d at 336.

Both parties have cited *In re Remington Rand Corp.*, 836 F.2d 825, 830 (3d Cir.1988) in which the Third Circuit spoke to the question of when a right to payment arises and discusses a third element, knowledge by the claimant of the existence of the claim. In *Remington* it was determined that all of the elements were present i.e. the right, the claim and knowledge of the claim. The existence of only two of the elements the right and the claim are present here and both were created on the date that Fonda filed its petition. The right to assert the preference arose by under 11 U.S.C. § 547 at the time the petition was filed and at that date all the events that would give rise to the preference action had occurred. Contemporary's reliance on the date Fonda became empowered to commence preference litigation assumes exactly what is at issue: When Fonda knew or should have known of facts to support a claim or right to payment.

Addressing briefly the argument of Contemporary that Fonda is precluded from continuing this adversary proceeding the Court concludes that Contemporary will have to establish at trial not only Fonda's knowledge of Contemporary's Chapter 11 case but also knowledge of the bar dates within which Fonda had to file or otherwise give notice of its claim. Absent appropriate notice Fonda's debt should not have been discharged by reason of § 1141. *See New York v. N.Y., N.H & H.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *In re Intaco Puerto Rico, Inc.*, 494 F.2d 94 (1st Cir.1974); *In re Harbor Tank Storage Co.*, 385 F.2d 111 (3d Cir.1967). The applicability of those cases may be limited by reason of the fact that Fonda was not a "creditor".

■ Giving due consideration to the elements of a claim as developed by the Third Circuit Court of Appeals in *Remington* as well as the fact that any obligation to repay funds (or release a lien) by reason of § 547 is entirely the creature of statute and not the result of any contractual or

---

**3.** The original bills in both the House (H.R. 8200, 95th Cong. 2nd Session) and Senate (S. 2266, 95th Cong. 2nd Session) provided and the House and Senate reports refer to "before the date of the order for relief". The legislative history provides no insight as to the change.

other relationship between the parties, this court concludes that the right to assert a preference is not enjoined by § 524 of the Code absent facts that would warrant imposing the doctrines of estoppel or laches. The strong Congressional policy favoring equal treatment among the members of a class of creditors requires that an entity that has the right to assert a preference claim should have a reasonable opportunity to assert that claim. To the extent necessary to achieve the foregoing result the Court relies on its authority pursuant to 11 U.S.C. § 105.

## EQUITABLE AND JUDICIAL ESTOPPEL AS A BAR TO CONTINUANCE OF REORGANIZED FONDA'S AVOIDING POWERS ACTION AGAINST CONTEMPORARY

Contemporary posits that Fonda was remiss in failing to disclose in its disclosure statement that it intended to commence 33 preference actions seeking recovery of approximately $646,739.60 in alleged preferential payments made to various creditors of Fonda. As such, Contemporary contends it was prejudiced because it "certainly had no reason to believe that any payments it received from Fonda in the ordinary course of business would subject Contemporary to liability", particularly since it was a chapter 11 debtor at the time and "believed it was protected by the automatic stay." (Contemporary Memorandum of Law at p. 23–24). Contemporary further cites as prejudicial its reliance on the representations or lack thereof in the disclosure statement concerning potential preference claims. Contemporary asserts that it would not have voted to accept the plan had the potential preference claim against it been fully disclosed. (Contemporary Memorandum of Law, at p. 24 and n. *). Reorganized Fonda argues that it did disclose the existence of possible preference actions both in its Disclosure Statement (Section III(E)) and Reorganization Plan (Article 13, paragraph 13.12), both providing in relevant part "Fonda and Reorganized Fonda are authorized to assert against any entity an Avoiding Powers Claim", and that had Contemporary desired

further disclosure, it should have filed the appropriate objection to the sufficiency of disclosure pursuant to BR 3017.

■ The time has long since passed to object to the sufficiency of Fonda's Disclosure Statement. Suffice it to say now that both Fonda's Disclosure Statement and Plan indicate the intention to assert so called Avoiding Powers Claim and provide for the distribution of any recoveries between Reorganized Fonda and the creditors of the Fonda estate. Fonda's Plan of Reorganization sets forth the definitions of terms peculiar to any potential "Avoiding Powers Claim" among those are Sections 1.07 entitled, Avoiding Powers Claim, and 1.31 entitled Gross Proceeds from Avoiding Powers Claim. These two sections provide in full as follows:

1.07 *Avoiding Powers Claim* —means any claim that may be asserted pursuant to the provisions of Section 544, Section 545, Section 547, Section 548, Section 549, Section 550, or Section 553(b) of the Bankruptcy Code whether or not asserted by the commencement of an adversary proceeding.

1.31 *Gross Proceeds from Avoiding Powers Claim* —means the gross amount of economic benefit received or derived as a result of the assertion, in any manner, of an Avoiding Powers Claim against any entity, without deduction or offset for any cost, expense or claim.

(Fonda's plan of Reorganization, at pp 3 and 5–6).

Surely, the disclosure in both sections provides plan solicitees with adequate notice of the prosecution of possible preference causes of action under 11 U.S.C. § 547.

■ In addition, having just confirmed its own plan of reorganization, Contemporary was or should have been sufficiently familiar with the bankruptcy process to determine whether it was or might be the target of a preference action. Therefore, Contemporary not Fonda must bear the burden of Contemporary's failure to further investigate the question. Furthermore, Movant assumes again that Fonda

knew or should have known of facts sufficient to establish the preference claim against Contemporary before the time it had its disclosure statement approved and its plan confirmed. The evidence that has been submitted to the Court thus far does not prove that state of knowledge and therefore that fact is in dispute. Exhibit A of Contemporary's memorandum of law is a list of creditors against whom Fonda commenced preference litigation. Exhibit B is Fonda's preference analysis. The letters of transmittal concerning Exhibits A and B are dated June 19, 1989 and June 13, 1989, respectively. Both dates are subsequent in time to the dates when Fonda had approved and confirmed its disclosure statement and plan of reorganization. Also, the preference analysis worksheets are not dated, so that there is no way to glean from these facts Fonda's or Reorganized Fonda's state of knowledge concerning the existence of preferences at a point in time prior to June 13, 1989. The Affidavit of Services filed by Debtor's counsel reflects no entries relating to claim or preference analysis prior to the confirmation of Fonda's Plan. As there is a factual dispute summary judgment is inappropriate based on this argument.[4]

The Court believes that summary judgment on Doctrine of Res Judicata or grounds of Equitable and Judicial Estoppel are also inappropriate. Contemporary argues that Fonda directly put amount of Contemporary's claim in issue by moving to reduce the amount of its timely filed proof of claim. Contemporary argues further that this was done at a time when the facts

support a finding that Fonda knew or should have known of a possible preference claim against Contemporary, yet failed to disclose it.

The Court notes that when Reorganized Fonda filed post confirmation the motion to reduce and or expunge claims on September 29, 1989, the Vice President of Financial Controls/Manufacturing of Fonda[5], Donald A. Manske, in his Certification In Support Of The Application For Order Authorizing Reduction And Expungement of Claims, certified that, in preparation of the Motion, he examined the books and records, schedule of liabilities, proofs of claim and claim docket. (Manske Certification, at p. 1). Specifically, Mr. Manske certified to the following facts in his certification of October 27, 1988, filed in support of the reduction and/or expungement of claims.

2. I submit this certification in support of the entry of an order authorizing the reduction and expungement of the claims of creditors as set forth on Exhibit "A" hereto.

3. I have reviewed the Debtor's books and records as kept in the Debtor's ordinary course of business.

4. In addition, I have reviewed the claims docket, the proofs of claim filed by creditors in this case which were provided to me by counsel and the Debtor's schedule of liabilities.

5. As a result of my examination of the Debtor's books and records, schedule of liabilities, proofs of claim, and claims docket I have determined that the actual and appropriate amount due and owing

---

**4.** The Reorganized Debtor argues, in rebutting Contemporary's claim that it had no reason to believe it would be subject to liability for payments received from Fonda in the ordinary course, that Contemporary is not unlike any other creditor who receives payments from a chapter 11 debtor within the 90 day preference period prior to the date a bankruptcy petition was filed. The court agrees that on this factor alone Contemporary is similarly situated with other creditors who receive payments within the presumed 90 day preference period of 11 U.S.C. § 547(b). The fact that Contemporary was itself a Chapter 11 debtor at the time is of no consequence; liability for payments, if any, arose post-petition and an action to enforce rights to collect on this debt is not stayed by 11

U.S.C. § 362. *In re Frenville, Co.,* 744 F.2d 332, 335–36 (3d Cir.1984).

**5.** DONALD A. MANSKE (Age 52)
Vice President—Financial Controls/Manufacturing
Mr. Manske joined Fonda as Controller in 1974, having previously served in various accounting functions at Brown & Bigelow, a division of Saxon Industries, Inc. In 1984, he became Vice President of the Fonda Group, Inc. Mr. Manske holds a degree in accounting and business law from the Minnesota School of Business. (Fonda Disclosure Statement, Section II(H), at p. 24)

to certain of the Debtor's creditors is as more fully set forth on Exhibit "A".

6. As indicated on Exhibit "A", certain creditors filed duplicative or excessive claims against the Debtor. In other instances, creditors filed claims; however, no money is reflected as due and owing on the Debtor's books and records.

7. I have been advised by counsel that none of the creditors listed on Exhibit "A" objected to the Debtor's motion to reduce and expunge their claims.

\* \* \* \* \* \*

*See also,* Application for Order Extending Time to File Objection to Claims, dated September 9, 1988, in particular, paragraphs 6, 7, 8 (same).

\* \* \* \* \* \*

A review of the Reorganized Debtor's books and records as kept in the ordinary course of business involved an analysis of purchases made from and payments made to Fonda's vendors to arrive at the amount due and owing on each account with respect to each claim as well as to evaluate the extent that claims filed were duplicative or excessive.

In short, every payment made by Fonda to reduce its obligation to Contemporary during the ninety day period prior to Fonda's bankruptcy now forms the basis of the preference claim. Certainly Fonda could have at the time it was gathering the facts to dispute the Contemporary claim, also assembled the facts that underlie this preference action. While it would have been desirable from the standpoint of judicial economy as well as economy to the parties the Court must reluctantly conclude that the failure to join the preference action and the dispute as to the amount of Contemporary's claim does not preclude Fonda from now asserting the preference claim.

■ First and foremost is the fact that the facts and legal issues involved in the application to reduce Contemporary's claim differ significantly from the facts and issues in the claim dispute. There is no doubt an overlap as to some of the relevant facts and in particular the payments within 90 days of the petition but otherwise the relevant facts and legal issues differ e.g. contemporaneous exchange, new value, ordinary course of business to name several.

■ Perhaps equally important is the fact that the Federal Rules of Civil Procedure as incorporated into the Bankruptcy Rules do not provide for the mandatory joinder of claims. Federal Rule 18 incorporated into the Bankruptcy Rules by Bankruptcy Rule (BR) 7018 provides for the permissive joinder of claims and remedies. Contemporary's argument that the preference action should have been asserted as a compulsory counterclaim to Contemporary's Proof of Claim is not persuasive. Neither the filing of the Proof of Claim or the Application to reduce the Contemporary claim are adversary proceedings to which BR 7013 apply. Contemporary's position that BR 3007 converts an objection to the allowance of a claim to an adversary proceeding has no merit. An objection to the allowance becomes an adversary proceeding only if the objection is joined with a demand for relief of the specified in BR 7001 and Fonda's application to reduce Contemporary's claim did not include such demand.[6]

■ Movant's attempt to bar litigation of the preference claim on principles of Res Judicata must fail. The doctrine of Res Judicata has at its heart "the principle that the previously unlitigated claim to be precluded could and should have been brought in the earlier litigation." *D–1 Enterprises, Inc. v. Commercial State Bank,* 864 F.2d 36, 38 (5th Cir.1989) (citing *Southmark*

---

**6.** BR 7001 provides in part:
An adversary proceeding is governed by the rules of this Part VII. It is a proceeding (1) to recover money or property, except a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002, (2) to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d), ... (8) to subordinate any allowed claim or interest, except when subordination is provided in a chapter 9, 11, or 13 plan, (9) to obtain a declaratory judgment relating to any of the foregoing,....

*Properties v. Charles House Corp.,* 742 F.2d 862, 871 (5th Cir.1984). Fundamental to Movant's Res Judicata argument is the erroneous assumption that Reorganized Fonda should have raised as a counterclaim the preference at the time it objected to Movant's proof of claim. As stated above, the bankruptcy procedural rules of joinder or compulsory counterclaims do not compel the assertion of the Preference claim with the objection to claim. The objection to claim is a contested matter to which the compulsory counterclaim Rules do not apply; compared in adversary proceedings to which the compulsory counterclaim rules do apply. *See generally, D–1 Enterprises, Inc.,* 864 F.2d at 39. The Fifth Circuit in *D–1 Enterprises* rejected the notion that either Res Judicata or the Compulsory Counterclaim Rules could work to bar the debtor's subsequent litigation of lender liability claims against its major secured creditor. The *D–1 Enterprises* Court wrote:

> It would be odd indeed if a claim that was not required as a compulsory counterclaim by the Bankruptcy Rules and in fact could not be litigated as a defense to the motion for relief from the stay was nonetheless barred by *res judicata* within the same case. Many of the statutes and rules allow more leeway for the debtor-in-possession or trustee in a bankruptcy proceeding to be excused from failure to develop the case as rapidly as possible in order to promote the basic policy of marshalling all the assets for the benefit of creditors. For example, even the compulsory counterclaim rules found in Bankruptcy Rule 7013 include a liberal "escape clause":
>
> > A trustee or debtor-in-possession who fails to plead a counterclaim through oversight, inadvertence, or excusable neglect, or when justice so requires, may by leave of court amend the pleading, or commence a new adversary proceeding in a separate action.
>
> Bankruptcy Rule 7013. If the "compulsory" counterclaim rule is this generous to the trustee or debtor, it would be odd indeed for us to hold that the debtor must assert all related claims in a "contested matter" such as a motion to lift

the stay, to which the compulsory counterclaim rules do not even apply. That would lay a heavier burden on the debtor to respond with related claims in some unspecified "contested matters" than in "adversary proceedings," an exact inversion of the apparent wishes of Congress. (Emphasis in Opinion).

*D–1 Enterprises,* 864 F.2d at p. 39–40. *See also, In Re Torco Equipment Co.,* 65 B.R. 353 (W.D.Ky.1986) *aff'g and rev'g,* 39 B.R. 216 (Bankr.W.D.Ky.1984) (debtor not required to bring preference claim as counterclaim in contested matter to creditor relief from stay motion).

There is, in the opinion of the Court, further and perhaps a more subtle reason for preserving the right to assert a preference despite the fact that a debtor may have contested a claim. Congress recognized that a debtor might not be inclined to utilize the avoiding powers when it established the alternate period of limitations to assert the avoiding power that runs from the date of the appointment of a trustee. 11 U.S.C. § 546(a)(1). Not infrequently transactions that come within the ambit of the avoiding powers were effected voluntarily and intentionally by a debtor. If contesting a claim could have the res judicata effect advanced by Contemporary then a preference or other avoidable transfer could then readily be "perfected".

For the reasons set forth above Contemporary's motion for summary judgement is denied and this case will be set down for trial. It is the opinion of the court, however, that the trial will not be fully dispositive of all of the issues presented by this case. While I have concluded that the bar of § 1141 may not be applicable, the final determination of that issue should be made by the Court having jurisdiction of the contemporary reorganization. Even if it is eventually determined that the § 1141 discharge is applicable I do not interpret § 524 as an injunction against an action to determine whether a claim in fact exists. This Court is the appropriate forum to determine whether Fonda has a preference claim. If this Court determines that Fonda has a valid claim, then this

Court would then defer to the Bankruptcy Court for the Eastern District to determine whether the Fonda claim is barred, whether a late claim can be filed and whether the claim is as Fonda seems to assert, an administrative claim. Pending the final determination by this Court as to whether a claim exists and the Bankruptcy Court for the Eastern District of New York as to the treatment of the claim, Fonda shall escrow the payments due Contemporary under the Fonda Plan. Eventually a determination will have to be made on the Contemporary claim pursuant to either 11 U.S.C. §§ 502(d) or 502(h).

Counsel for Fonda is to submit the order denying Contemporary's Motion for Summary Judgement within ten days from the date hereof.