In re HOOKER INVESTMENTS, INC., L.J. Hooker Corporation, Inc., et al., Debtors.

BONWIT TELLER, INC., Plaintiff,

v.

JEWELMASTERS, INC., Defendant.

Bankruptcy No. 89 B 11986 (TLB).
Adv. No. 93–8858A.

United States Bankruptcy Court, S.D. New York.

Dec. 23, 1993.

As Changed Jan. 6, 1994.

428

Edwards & Angell, New York City, for the plaintiff.

Fulbright & Jaworski L.L.P., New York City, for defendant.

## OPINION ON MOTION TO DISMISS

TINA L. BROZMAN, Bankruptcy Judge.

This motion to dismiss a preference action plumbs the depths of postconfirmation jurisdiction. It also invites me to overrule my decision in *Alithochrome, Inc. v. East Coast Finishing Corp. (In re Alithochrome, Inc.)*, 53 B.R. 906 (Bankr.S.D.N.Y.1985), which held that a debtor in possession is not bound by the two-year statute of limitations contained in section 546 of the Bankruptcy Code, and join the two circuit courts of appeal which have held otherwise. Whereas I do not shrink from disavowing my erroneous decisions,[1] in this instance I believe I did not

---

1. *See, e.g., Beekman Paper Co. v. St. Theresa Prop-* *erties (In re St. Theresa Properties )*, 152 B.R. 852,

err. Defendant Jewelmasters, Inc. ("Jewelmasters"), which asserts that the action is barred, moves to dismiss the complaint of plaintiff Bonwit Teller, Inc. ("Bonwit") on the asserted grounds that (1) the complaint fails to state a claim under Fed.R.Civ.P. 12(b)(6);[2] (2) this court lacks subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1); and (3) the action is precluded by the equitable doctrine of laches.

## I.

Bonwit, now known officially as B.T. Divestiture Corp., along with other affiliates of L.J. Hooker Corporation, Inc. (collectively, the "debtors"), filed a voluntary petition for chapter 11 relief on August 9, 1989. On March 18, 1992, Jewelmasters filed a proof of claim against Bonwit for $251,612.28. Bonwit never filed a document styled as an objection to Jewelmasters' claim.

The debtors, which continued in possession of their businesses and property, filed a joint plan of reorganization (the "Plan") which was confirmed by my order on June 5, 1992 (the "Confirmation Order"). That Plan dedicates to the Class 3A retail trade creditors the recoveries from certain avoidance actions. Plan § 3.11.1(b). In conjunction with that provision, Article 7 of the Plan (entitled "Post–Confirmation Supervision of the Debtors") also provides in pertinent part that the Class 3A Retail Committee (the "Committee"), composed of certain Class 3A trade creditors, shall have specified powers including the "assertion, settlement, compromise or abandonment of all Class 3A (Retail) Avoiding Power Actions, subject to the approval of the Bankruptcy Court." Plan § 7.3.1(b). Avoiding Power Actions are defined in section 1.11 as "those claims and causes of action which (i) have been or could be brought by the debtors under Bankruptcy Code sections 544–550 inclusive, and (ii) are listed on schedule 9 hereto and which have not been compromised or resolved by a final order of the Bankruptcy Court." Schedule 9 lists both pending actions and claims upon which suit has not been brought yet. Bonwit's claim against Jewelmasters is identified in

Schedule 9 as being of the latter type. As it so happens, however, Bonwit actually commenced an adversary proceeding against Jewelmasters subsequent to the promulgation yet prior to the confirmation of the Plan. But that adversary proceeding was dismissed, as discussed below, and this one was started by the Committee, on Bonwit's behalf, subsequent to confirmation of the Plan.

To put this motion into proper focus, one must step back a little, to 1991, when the Tenth Circuit held that a debtor in possession, like a trustee, is bound by the two-year statute of limitations for the commencement of avoidance actions contained in section 546 of the Bankruptcy Code. *Zilkha Energy Company v. Leighton,* 920 F.2d 1520 (10th Cir.1990), *appeal after remand,* 999 F.2d 548 (10th Cir.1993). The debtors here, like many other circumspect debtors, were wary of this decision, notwithstanding that the decisions in this district uniformly held that a debtor in possession is not bound as is a trustee. To protect against the possibility that *Zilkha* would be followed in this Circuit, our debtors either commenced avoidance actions prior to the expiration of the two-year anniversary of their bankruptcy filings or entered into tolling stipulations with potential targets of such actions. Thus, on August 7, 1991, the debtors and Jewelmasters entered into the first of four agreements tolling any statute of limitations on any claim or action that the debtors might bring against Jewelmasters. The last tolling stipulation was set to expire on May 8, 1992. Two days before that occurred and one month prior to confirmation of the Plan, Bonwit commenced a preference action against Jewelmasters. Bonwit did not attempt to effect service, leaving that task to the Committee, presumably since prosecution of the Avoiding Power Actions was reserved to the Committee under the Plan. On September 2, 1992, virtually on the eve of the expiration of the 120–day period permitted by Fed.R.Bankr.P. 7004(a) for service of the summons, the Committee's counsel delivered the summons and complaint to Jewelmasters'

---

853 n. 1 (Bankr.S.D.N.Y.1993).

**2.** Fed.R.Civ.P. 12 is incorporated by reference in Fed.R.Bankr.P. 7012.

counsel. Counsel did not deliver the summons and complaint to Jewelmasters nor did counsel mail them to Jewelmasters, as the Committee certainly could have done under Fed.R.Bankr.P. 7004, which permits nationwide service of process by mail. Not long after receipt of the summons and complaint, Jewelmasters' counsel questioned the propriety of service in a letter which he sent to the Committee's counsel. Jewelmasters later moved successfully to dismiss that complaint pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(5) on the basis that the Committee's service of process on Jewelmasters was insufficient. On March 1, 1993, I dismissed Bonwit's complaint without prejudice.

Nearly two months later, on April 30, 1993, the Committee filed the revised complaint commencing this adversary proceeding and served Jewelmasters by mail on June 7, 1993. In lieu of answering, Jewelmasters again moved to dismiss.

## II.

Jewelmasters mounts a variety of challenges to the viability of this preference action:

(i) that it is barred by the statute of limitations of section 546(a)(1) of the Code;

(ii) that the Plan does not permit the post-confirmation commencement of preference actions;

(iii) that even if the Plan assigned the Avoiding Power Actions to the Committee, there was no proper retention of jurisdiction to prosecute claims post-confirmation pursuant to section 1123(b)(3)(B) of the Code because the language employed was not sufficiently specific;

(iv) that the Committee is not a proper representative of the estate to enforce a claim under section 1123(b)(3)(B) of the Code;

(v) that the commencement of this action is barred by the doctrine of res judicata by virtue of the fact that the debtor never filed a piece of paper styled as an objection to Jewelmasters' claim but instead designated the claim as disputed in the Plan; and

(vi) that the action is barred by the equitable doctrine of laches.

The Committee disputes the validity of each and every one of these arguments, maintaining that the complaint is timely and its prosecution permissible under the terms of the Plan and the Code.

## III.

### A. Fed.R.Civ.P. 12(b)(6)

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) may be granted only where it appears beyond a reasonable doubt that no set of facts could be proven at trial that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Kolinsky v. Russ (In re Kolinsky)*, 100 B.R. 695, 705 (Bankr.S.D.N.Y.1989). On a motion to dismiss, a court must read the complaint generously and make all reasonable inferences in favor of the nonmoving party. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *Raine v. Lorimar Productions, Inc.*, 71 B.R. 450, 453 (S.D.N.Y.1987); 2A J. Moore, *Moore's Federal Practice*, ¶ 12.07[2.–5] at 12–84 (2d ed. 1993). The court's function is not to weigh the evidence that might be presented at a trial, but merely to determine whether the complaint itself is legally sufficient. *Festa v. Local 3, International Brotherhood of Electrical Workers*, 905 F.2d 35, 37 (2d Cir.1990).

When determining the sufficiency of the complaint for rule 12(b)(6) purposes, the court's consideration is limited to the factual allegations in the complaint, which must be accepted as true, to documents attached to the complaint as exhibits, or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit. *Brass*, 987 F.2d at 150, *citing Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Pension Benefit Guaranty Corporation v. White Consolidated Industries, Inc.*, 998 F.2d 1192,

1196 (3d Cir.), *petition for certiorari filed,* 62 USLW 3336 (October 26, 1993) (on a motion to dismiss, court may consider allegations contained in the complaint, exhibits attached to the complaint, matters of public record and certain indisputably authentic documents); *see also Chan v. City of New York,* 1 F.3d 96, 98 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 472, 126 L.Ed.2d 423 (1993).

 Thus I may consider both the debtors' Plan and the Confirmation Order; although neither was appended to Bonwit's complaint, both are incorporated in that document by reference. *See* Bonwit's Complaint ¶ 5 at p. 2. Indeed, Bonwit's ability to bring this action is based upon the provisions of the Plan. Moreover, I certainly can take judicial notice of the provisions of the Plan and the Confirmation Order since both are concededly authentic and a matter of public record.

That said, I now turn to the substance of Jewelmasters' arguments. Whereas one might normally expect to begin with the statute of limitations, Jewelmasters contends that even if the statute is no bar, the Plan did not reserve to the Committee the right to commence this action, and therefore, the order of confirmation is *res judicata,* prohibiting the commencement of this suit. I begin with that threshold issue.

## B. *Jurisdiction*

Jewelmasters argues that the Plan neither properly provides for the postconfirmation commencement of preference actions nor retains this court's jurisdiction to hear any such postconfirmation suits. Neither argument has much merit.

 The Plan clearly and unequivocally contemplated the commencement of postconfirmation preference actions by the Committee. The Plan defines "Avoiding Power Actions" to comprise those claims or causes of action "which have been or could be brought. . . ." and which are listed on Schedule 9. Plan § 1.11. And the Plan includes

among the rights, powers and duties of the Committee "the *assertion,* settlement, compromise or abandonment of all Class 3A (Retail) Avoiding Power Actions, subject to the approval of the Bankruptcy Court." Plan § 7.3.1(b) (emphasis added). The "assertion" of a specifically identified claim or cause of action necessarily implicates commencement of suit on that claim or cause of action. Reading sections 1.11 and 7.3.1(b) of the Plan together with Schedule 9, which lists Bonwit's claim against Jewelmasters, one firmly concludes that the Plan reserved the right for the Committee to sue Jewelmasters postconfirmation for the return of a preferential transfer made by Bonwit.

The case Jewelmasters cites in support of its contrary (and strained) interpretation of the Plan actually is not at odds with this conclusion. As in this case, at issue in *In re Mako, Inc.,* 120 B.R. 203 (Bankr.E.D.Okla. 1990), was whether the debtor's confirmed Chapter 11 plan unambiguously retained the right to prosecute further litigation *after* confirmation. There, the court found ambiguous the pertinent provisions of the plan and resolved the ambiguity against its drafter, the debtor. Unlike the plan in *Mako,* however, the provisions in our Plan are not ambiguous; the Plan specifically lists the precise claims and actions in which the debtors preserved their rights.[3] It is difficult to imagine how the debtors could have crafted a more explicit reservation of Bonwit's right to bring this suit against Jewelmasters postconfirmation.

 We move on, then, to the assertion that the Plan did not retain my jurisdiction with respect to this adversary proceeding. Article 11 of the Plan, entitled "Jurisdiction of the Bankruptcy Court," retains for this court the jurisdiction "to hear and determine the Avoiding Power Actions and such other actions under Bankruptcy Code sections 510 and 544 through 550, inclusive, as may be brought under this plan." Since I have found that this particular adversary proceed-

---

**3.** In *Mako,* the plan discussed ". . . the right to prosecute or defend any other such litigation which the Debtor or Liquidating Trustee *may have brought on or before the effective date.*" 120 B.R. at 208 (emphasis added). Our relevant language is much clearer. Moreover, any uncer-

tainty said by Jewelmasters to be generated by the language employed in subsection 1.11(i), when standing alone, evaporates when subsection 1.11(ii) is considered with it, as the Plan dictates, since the two subsections are in the conjunctive.

ing falls within the definition of Avoiding Power Actions properly reserved, it follows inexorably that I have jurisdiction over the adversary proceeding pursuant to Article 11 of the Plan.[4]

### C. *Standing*

■ To cover itself on all fronts, Jewelmasters valiantly argues that if the Plan reserved my jurisdiction to adjudicate a postconfirmation preference action against Jewelmasters, because there no longer is a debtor and there never has been a trustee, there is no party with standing or power to bring this preference claim postconfirmation, notwithstanding the language of the Plan and Confirmation Order vesting the Committee with such authority. *See* Jewelmasters' Memorandum of Law at p. 24. Section 1123(b)(3)(B) of the Bankruptcy Code contemplates what has occurred here. It states that a plan may provide for "the retention and enforcement by the debtor, by the trustee, *or by a representative of the estate appointed for such purpose,* of any such claim or interest [belonging to the debtor or to the estate]" (emphasis supplied). As discussed above, the Plan at section 7.3.1(b) provides that the Committee shall have the power to assert the Avoiding Power Actions. To implement this, the Confirmation Order, at paragraph 20, authorizes the Committee to execute pleadings and to bring or defend legal action in the name of the debtors to the extent necessary to prosecute and/or settle the Avoiding Power Actions preserved for the benefit of Class 3A under the Plan. The Committee, which did not exist prior to confirmation, was created precisely to exercise this function. Although Jewelmasters fails to cite any case law in support of its rather bald assertion that the Committee lacks

standing, *Mako,* a case on which Jewelmasters relies heavily, directly contradicts Jewelmasters' proposition. *Mako* states that in order to have standing to bring a postconfirmation avoidance action, a party who is neither the debtor nor the trustee "must establish two elements: (1) that it has been appointed; (2) that it is a representative of the estate." *Mako,* 120 B.R. at 209 (quoting *In re Amarex, Inc.,* 96 B.R. 330, 332–3 (Bankr. W.D.Okl.1989)). As for the first element of this test, Section 7.3.1 of the Plan provides that "The Class 3A (Retail) Committee is hereby appointed as the representative of the Estates for the purposes set forth in this paragraph 7.3.1, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code." With respect to the second element, a recovery on this action would result in a benefit to Class 3A retail trade creditors of the estate, qualifying the committee as an appropriate estate representative. *Mako,* 120 B.R. at 210; *accord Citicorp Acceptance Co., Inc. v. Robison (In re Sweetwater),* 884 F.2d 1323 (10th Cir.1989) (a representative may be named in the plan to pursue actions under the avoiding powers usually reserved for the trustee or debtor in possession so long as the representative is pursuing these claims belonging to the estate for the benefit of its creditors). It is quite clear then that the Committee properly was vested with standing to bring this adversary proceeding.

### D. *Res Judicata*

■ We move on to Jewelmasters' *res judicata* argument. Briefly stated, the theory is that Bonwit's failure prior to confirmation of the Plan to properly object to Jewelmasters' proof of claim deems it an allowed claim not subject to postconfirmation attack.[5]

4. The Confirmation Order also clearly contemplates post-confirmation preference actions. Paragraph 20 of that order authorizes the Committee "to execute documents, agreements or pleadings and to bring or defend legal action in the name of LJ Hooker Corporation, Inc. or any of the entities set forth on Schedule 1 of the Plan, to the extent necessary to prosecute and/or settle the Avoiding Power Actions preserved for the benefit of Class 3A under the Plan." I express no opinion on whether I have jurisdiction to hear any other action which is not an Avoiding Power Action.

5. Jewelmasters argues that its claim must be deemed allowed since no document styled as an objection was filed before confirmation. I need not decide the status of Jewelmasters' claim for the purposes of the instant motion, but feel compelled to observe that Jewelmasters' argument seemingly elevates form over substance. Although Fed.R.Bankr.P. 3007 provides little guidance as to what form an objection must take, at the very least an objection should be in a form such that it is clear to the claimant that it is an objection to the claim. *See generally* 8 L. King, *Collier on Bankruptcy,* ¶ 3007.3 at 3007–7 (15th

The argument continues that the confirmed plan is *res judicata*, precluding this preference action. Jewelmasters is correct in observing that a confirmed plan of reorganization has full preclusive effect and is binding on all parties thereto. 11 U.S.C. § 1141(a); *Sure–Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869, 873 (2d Cir.1991); *accord Eubanks v. Federal Deposit Insurance Corporation*, 977 F.2d 166, 169 (5th Cir.1992); *Sanders Confectionery Products, Inc. v. Heller Financial Inc.*, 973 F.2d 474, 480 (6th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993). Thus, assuming without deciding that Jewelmasters has an allowed claim, if the remaining elements of *res judicata*[6] are established, the subsequent litigation of claims that could have been raised in the prior action would be barred.

Relevant case authority suggests an exception to the general rule where a confirmed plan, by its express terms, preserves any claims for postconfirmation adjudication. In *Sure–Snap*, the Second Circuit implied the existence of such an exception. There, the debtors' confirmed plan did not expressly preserve the right to bring outstanding causes of action that had not yet been raised, so the debtors attempted to modify the plan to remedy the defect. The bankruptcy court denied the debtors' motion as well as two subsequent motions to reconsider. During the final hearing, the debtors inquired whether the court's refusal to modify the plan would preclude subsequent litigation; the court responded that it believed that any causes of action or claims would be reserved to the debtor. In deciding the effect of the bankruptcy judge's statement, the Second Circuit concluded that "the judge's colloquy was not dispositive of appellants' *allegedly reserved right.*" *Id.* at 873 (emphasis added). The implication is that had the debtors' right to bring subsequent litigation been reserved

expressly in the plan, such postconfirmation litigation would have escaped the *res judicata* bar. In fact, that is exactly what the debtors in *Sure–Snap* attempted, and failed, to accomplish when they moved to modify the confirmed plan. *See also Eubanks,* 977 F.2d at 174 (suggesting that had the claims asserted in actions commenced after confirmation been listed on a schedule of assets in the plan, set forth in the disclosure statement or otherwise brought to the bankruptcy court's attention, they may have escaped the *res judicata* bar).

In a recent unpublished disposition, *In re Micro–Time Management Systems, Inc.*, 983 F.2d 1067 (Table), 1993 WL 7524 (6th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 287, 126 L.Ed.2d 237 (1993), the Sixth Circuit also confronted the *res judicata* effect of an order of confirmation and held that:

> [a]n order confirming a plan of reorganization bars litigation of the claims raised in the bankruptcy proceedings and also bars any claims that could have been raised in the bankruptcy proceedings or the confirmation proceedings *not expressly reserved in the plan of reorganization or the order confirming the plan of reorganization.*

*Micro–Time,* 1993 WL 7524 at *4 (emphasis added), (citing *Sure–Snap* ). The debtor's plan in *Micro–Time* only provided that "all causes of action which the debtor may choose to institute shall be vested with the debtor." The Sixth Circuit concluded that although this blanket reservation did preserve the debtor's right to institute actions, it was insufficient to prevent the creditor from moving to dismiss the action based on the doctrine of *res judicata. Micro–Time,* 1993 WL 7524 at *5.

Each of these decisions either expressly or impliedly recognizes that whereas a blanket reservation would not be enough to

---

ed. 1993) (an objection should, "at a minimum include allegations sufficient to overcome the prima facie validity of the filed proof of claim . . ."). In this case, Jewelmasters was put on notice by the Plan that its claim was disputed because Jewelmasters was the recipient of an alleged preference. *See* Plan § 1.37(d) and Schedule 9 of Avoiding Power Actions; 11 U.S.C. § 502(d) (disallowing claim of any transferee of

an avoidable transfer unless the transferee has paid the amount for which it is liable).

**6.** In this Circuit, *res judicata* requires that: (1) the same parties be litigating both actions; and (2) both claims are the same. Sameness of claims requires that the same transaction, evidence and factual issues be involved. *Sure–Snap,* 948 F.2d at 874.

escape the *res judicata* bar, an express reservation would. In this case, the Plan contains an express reservation for Bonwit (or the Committee on its behalf) to commence an avoidance action against Jewelmasters and an express reservation of the court's jurisdiction to hear the scheduled avoidance actions, once commenced. In addition, as noted earlier, paragraph 20 of the Confirmation Order authorizes the Committee to commence, prosecute and/or settle the Avoiding Power Actions preserved for the benefit of Class 3A. This being so, *res judicata* is no bar.[7]

### E. *Statute of Limitations*

■ Section 546(a) of the Code provides that various avoidance actions "may not be commenced after the earlier of—(1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or (2) the time the case is closed or dismissed." Until 1990, the majority of courts construing section 546(a) had held that its two-year statute of limitations did not apply to debtors in possession, with the result that the debtor in possession could bring suit until its case were closed or dismissed (assuming that jurisdiction of the court persisted). *See, e.g., Korvettes, Inc. v. Sanyo Electric, Inc. (In re Korvettes, Inc.)*, 67 B.R. 730 (S.D.N.Y.1986); *AOV Industries, Inc. v. Saltzstein (In re AOV Industries, Inc.)*, 62 B.R. 968 (Bankr.D.D.C.1986); *Alithochrome*, 53 B.R. 906; *Boatman v. E.J. Davis Corp.*

*(In re Choice Vend, Inc.)*, 49 B.R. 719 (Bankr.D.Conn.1985). That view was cast into doubt, however, by the Tenth Circuit's decision in *Zilkha*, holding squarely the opposite, that the two-year of limitations does apply to debtors in possession. 920 F.2d at 1524. The Ninth Circuit recently adopted the *Zilkha* position in *Upgrade Corporation v. Government Technology Services, Inc. (In re Softwaire Centre International, Inc.)*, 994 F.2d 682 (9th Cir.1993).[8]

■ *Zilkha* and *Softwaire* deem section 546(a) ambiguous.[9] They reason that this must be so because in section 1107(a) Congress "clothed a debtor in possession with all the powers of a trustee." *Zilkha*, 920 F.2d at 1523. From this, *Zilkha* concluded that a debtor in possession is the "functional equivalent" of a trustee. *Id.* at 1524. What *Zilkha* ignores, however, is that a debtor in possession is not given all the duties of a trustee. Specifically the debtor in possession is not required to "investigate the acts, conduct, assets, liabilities, and financial conditions of the debtor ..." nor is the debtor in possession required to "file a statement of any investigation conducted.... including any fact ascertained pertaining to ... a cause of action available to the estate ..." 11 U.S.C. § 1106(a)(3) and (4) and 11 U.S.C. § 1107(a). Removal of these duties from a debtor in possession is consistent with the manner in which debtors in possession most

---

7. Because of the express reservation of the right to bring this action, *res judicata* does not bar it and I need not determine whether Jewelmasters' claim is allowed. A debtor is not required to assert an avoidable transfer as a counterclaim to a proof of claim, although the debtor is free to do so. *Fonda Group, Inc. v. Contemporary Packaging Corp. (In re Fonda Group Inc.)*, 108 B.R. 962, 970 (Bankr.D.N.J.1989) (debtor's preference action was not precluded simply because it was not raised as a counterclaim in the contested matter the debtor brought to object to the creditor's proof of claim); *cf. L.J. Hooker International Florida, Inc. v. Gelina (In re Hooker Investments, Inc.)*, 131 B.R. 922 (Bankr.S.D.N.Y.1991) (rejection of executory contract is no bar to subsequent action to avoid rejected contract as fraudulent). So if Jewelmasters' claim were deemed allowed, as long as the debtor has properly reserved the right to bring the avoidance action postconfirmation, its estate may recover nonetheless from Jewelmasters.

8. A more recent Ninth Circuit decision casts some doubt on the law in that Circuit. In *Ford v. Union Bank (In re San Joaquin Roast Beef)*, 7 F.3d 1413 (9th Cir.1993), without mentioning *Softwaire*, the circuit court stated that the statute of limitations begins running from the appointment of the first trustee. Had the circuit court followed *Softwaire*, it would have dated the running of the statute of limitations a year earlier, when the debtor then in possession filed its petition. *See* Rodgers, *Ninth Circuit Thinly Slices § 546's Statute of Limitations in San Joaquin Roast Beef*, Norton Bankr.L.Advisor, No. 12 at 6 (Dec. 1993).

9. *Zilkha* mentioned as a flaw in my decision in *Alithochrome* that "no consideration was given to the ambiguity of § 546(a)(1)." 920 F.2d at 1524 n. 10. As discussed below, I continue to believe that section 546(a)(1) is not ambiguous; however, even if it were considered to be ambiguous, proper analysis demonstrates that *Zilkha* reached the wrong decision.

often conduct reorganization cases; that is, they negotiate with their creditors and solve their business problems long before they consider whether to seek to recover avoidable transfers. *See San Joaquin,* 7 F.3d at 1415. One reasonably could question, therefore, the functional equivalency alluded to by *Zilkha,* at least with respect to avoidance actions. The real issue, however, is not whether the debtor in possession has the powers of a trustee, but whether section 546(a)(1), which applies to trustees, also applies to debtors in possession.

*Zilkha* has failed to persuade the overwhelming majority of courts not bound by the decisions of the Ninth and Tenth Circuits. *See, e.g., In re Brin–Mont Chemicals, Inc.,* 154 B.R. 903 (M.D.N.C.1993); *Saccurato v. Shawmut Bank, N.A. (In re Mars Stores, Inc.),* 150 B.R. 869 (Bankr.D.Mass. 1993); *Cardullo v. Dwyer Mechanical Corp. (In re Cardullo),* 142 B.R. 138 (Bankr. E.D.Va.1992); *Freedom Ford, Inc. v. Sun Bank & Trust Co. (In re Freedom Ford, Inc.),* 140 B.R. 585 (Bankr.M.D.Fla.1992); *Pate v. Hunt (In re Hunt),* 136 B.R. 437 (Bankr.N.D.Tex.1991); *In re Allegheny International, Inc.,* 136 B.R. 396 (Bankr. W.D.Pa.1991), *aff'd,* 145 B.R. 823 (W.D.Pa. 1992); *United States Lines (S.A.), Inc. v. U.S. (In re McLean Industries, Inc.),* 132 B.R. 247 (Bankr.S.D.N.Y.1991); *Katon v. International Bank of Miami, N.A. (In re Tamiami Range & Gun Shop, Inc.),* 130 B.R. 617 (Bankr.S.D.Fla.1991); *Caplan v. United States Brass & Copper Co. (In re Century Brass Products, Inc.),* 127 B.R. 720 (Bankr. D.Conn.1991); *but see Sparmal Enterprises, Inc. v. Moffit Realty Corp. (In re Sparmal Enterprises, Inc.),* 126 B.R. 559, 562 (S.D.Ind.1991); *Construction Management Services, Inc. v. Manufacturers Hanover Trust Company (In re Coastal Group, Inc.),* 125 B.R. 730, 732 (Bankr.D.Del.1991). The leading bankruptcy treatise, too, rejects the view espoused by *Zilkha:*

> Thus, if a debtor in possession is serving in a case under chapter 11 and no trustee has been appointed, the two year period arguably would not begin to run unless and until a trustee is appointed. The better view is that section 1107(a), which gives the debtor powers of a trustee and sub-

jects the debtor in possession to the limitations placed on a trustee, does not equate service of the debtor in possession with the appointment of a trustee for the purposes of section 546(a).

4 L. King, *Collier on Bankruptcy,* ¶ 546.02[2] at 546–10–11 (15th ed. 1993).

I reaffirm my view first expressed in *Alithochrome* that the debtor in possession is not bound by the two-year statute of limitations contained in section 546(a)(1) of the Bankruptcy Code. Section 546(a)(1) does not say simply that its two-year limitation applies to a trustee. Rather, the section provides that an action may not be commenced later than "two years after the appointment of a trustee under section ... 1104 ... of this title; ..." This wording stands in sharp contrast to that used throughout the majority of the other sections of the Bankruptcy Code, which, when they mention a trustee, do not talk about a trustee appointed under enumerated sections of the Code. *See, e.g.,* 11 U.S.C. §§ 108(a) (granting to "the trustee" a two-year extension from the date of the order for relief of the debtor's time to commence an action); 324; 325; 330; 501(c); 521(3); 544; 545; 547; 548 and 550. Even 546(b) and (c), the two subsections which directly follow the statute of limitations contained in subsection 546(a), refer simply to the rights and powers of "a trustee." Where Congress meant to limit the applicability of the bankruptcy law to particular kinds of trustees, it said so. Thus, in section 303, for example, although Congress provided for the commencement of an involuntary case under chapters 7 or 11, in subsection (g) Congress provided for the appointment of "an interim trustee under section 701," but did not provide for the appointment of an interim trustee under section 1104. Since Congress departed in section 546(a) from the wording which it used throughout most of the Code as well as from the wording which it used in other subsections of section 546, I cannot conclude, as did the *Zilkha* court, that subsection 546(a) is ambiguous and that Congress did not intend to limit actions filed by an appointed trustee to two years without making the same restriction apply to a debt-

**436**

or in possession. As one post-*Zilkha* decision explained, if

> section 546(a) simply read 'two years after the appointment of a trustee,' and left out the specific Code sections Congress sought to include, the Court might be more inclined to accept the analysis in *Zilkha* that the statute is ambiguous and that Congress' use of 'trustee' was meant to apply to debtors in possession as well as appointed trustees. However, the inclusion of the enumerated sections makes clear that Congress intended section 546(a)(1) to apply only to trustees appointed under one of those sections, and not to debtors in possession.

*Hunt,* 136 B.R. at 447 n. 11; *accord Brin-Mont,* 154 B.R. at 906 n. 2; *Mars,* 150 B.R. at 877. Moreover, as Judge Haight noted in *Korvettes,* several cases holding that section 546(a)(1) did not apply to debtors in possession were on record when Congress amended the Bankruptcy Code in 1984. Congress' failure to amend subsection 546(a)(1) to include debtors in possession is some support for the view that that subsection does not apply to them. *Id.,* 67 B.R. at 733.

■ Even were I to assume, as the Tenth Circuit held, that subsection 546(a) is ambiguous, in light of recent Supreme Court jurisprudence I still would not reach the conclusion expressed in *Zilkha.* Where statutory language is ambiguous, a court is not free to legislate but instead must look to the supporting legislative history and, if necessary, to pre-Code practice. *680 Fifth Avenue Associates v. Mutual Benefit Life Insurance Company In Rehabilitation (In re 680 Fifth Avenue Associates ),* 156 B.R. 726, 734 n. 12 (Bankr.S.D.N.Y.1993). The first step in the analysis, legislative history, is unavailing here because the legislative history contradicts the express language of section 546(a)(1) as adopted and is of no guidance. *See* S.Rep. No. 989, 95th Cong., 2nd Sess. 87 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5873.[10] Notwithstanding, if I were to have concluded that the meaning of the statute is unclear, the next step would have

been to look back to pre-Code practice for interpretive assistance. *See Dewsnup v. Timm,* — U.S. —, —, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992).

Engaging in this exercise leads to the conclusion that Congress never intended section 546(A)(1) to extend to debtors in possession. Under section 11e of the former Bankruptcy Act, liquidating trustees had two years to initiate preference actions which "period was tolled during the pendency of a reorganization case." Gerald Smith & Frank Kennedy, *Fraudulent Transfers And Obligations: Issues of Current Interest,* 43 S.C.L.Rev. 709, *12 (1992); *See Davis v. Security National Bank,* 447 F.2d 1094, 1098 (9th Cir.1971); *Liman v. Bank of Nova Scotia,* 337 F.Supp. 62, 65 (S.D.N.Y.1971). When it enacted the Bankruptcy Code, Congress unequivocally departed from prior law by expressly eliminating the tolling provisions in reorganization cases with respect to trustees. Smith and Kennedy, 43 S.C.L.Rev. 709 at *13. That Congress neither codified nor discussed in the legislative history such a change for debtors in possession is illuminating and certainly supports the view that Congress did not intend to effectuate a major change to pre-Code practice. As the Supreme Court concluded in *Dewsnup:*

> When Congress amends the bankruptcy laws, it does not write "on a clean slate." Furthermore, this Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history.

— U.S. at —, 112 S.Ct. at 779 (citations omitted). Assuming that section 546(a) is ambiguous, given the absence of any meaningful legislative history, the conclusion is inescapable that Congress did not intend to effect a major change in this area with respect to debtors in possession. *See* Smith and Kennedy, 43 S.C.L.Rev. 709 at *13.

---

**10.** The text of the legislative history says: "Subsection (c) adds a statute of limitations to the use by the trustee of the avoiding powers. The limitation is two years after his appointment, or the time the case is closed or dismissed, *whichever occurs later.*" (emphasis added) As enacted, section 546(a)(1) says that the earlier event is the limiting one.

There are policy reasons as well which favor the reading that Congress meant what it said in section 546(a)(1), that is, that the statute of limitations runs from the appointment of a trustee under one of the enumerated sections. A debtor in possession typically has no incentive to bring avoidance actions. This is a very real distinction between a debtor in possession and a trustee. If there are garden variety preference claims, the debtor may well prefer to forgo its recovery so as not to antagonize the very creditors who must vote in favor of the plan and extend future credit to the debtor. *See San Joaquin,* 7 F.3d at 1415–16. If an insider has executed a guarantee of the debt to a creditor who was preferred, the debtor may not wish to sue to recover the preference because the insider guarantor may be called upon to pay the creditor. If there are claims against insiders for preferences or fraudulent transfers, the debtor may not wish to pursue them. And if the debtor has engaged in actual, rather than constructive, fraud of its creditors, it may not relish suit on that either. Whereas a creditors committee could be authorized to commence such actions on behalf of the estate, *see In re STN Enterprises,* 779 F.2d 901, 904 (2d Cir.1985), in a great many chapter 11 cases there *is* no committee to look into what claims may exist. Application of a two-year statute of limitations would mean that if the case were con-

verted to one under chapter 7, the chapter 7 trustee may have no claims to pursue if the limitations period has already expired through the calculated inaction of the debtor.[11] In short, the Tenth Circuit's disbelief that Congress meant what it said is not well founded; there is a very convincing rationale behind what Congress wrote.

▇ Accordingly, because Bonwit's case is not closed and has not been dismissed, I hold that this adversary proceeding is not barred by the statute of limitations.

### F. *Laches*

▇ Jewelmasters' final asserted basis for dismissal is the equitable defense of laches. Since Bonwit commenced this action within the applicable limitations period, before its case is closed or dismissed, one could argue, as has the Committee, that laches is unavailable to Jewelmasters as a defense. Much authority exists to support this view. *U.S. v. Repass,* 688 F.2d 154, 158 (2d Cir. 1982); *ILGWU Nat. Retirement Fund v. Smart Modes of Cal., Inc.,* 735 F.Supp. 103, 106 (S.D.N.Y.1990); *U.S. v. Cohn,* 682 F.Supp. 209, 224 (S.D.N.Y.1988); *Korvettes,* 67 B.R. at 734; *but see Brin–Mont,* 154 B.R. at 907. However, I need not determine whether laches is a defense to an action brought within the limitations period[12] for assuming that laches is so available, here, it

---

11. Although there is some dispute over whether the two-year statute of limitations would begin to run anew when a case is converted to one under Chapter 7, I note, without resolving this issue, that the majority view is that once the two-year statute of limitations has run, it cannot be revived. *See San Joaquin Roast Beef,* 7 F.3d at 1413–1416 (statute of limitations does not begin anew upon conversion); *Steege v. Lyons (In re Lyons),* 130 B.R. 272, 276 (Bankr.N.D.Ill.1991) (following "majority" view); *but see Amazing Enterprises v. Jobin (In re M & L Business Machines, Inc.),* 153 B.R. 308, 310–11 (D.Colo. 1993), *aff'd,* 160 B.R. 850 (D.Colo.1993) (limitations period begins anew upon conversion and appointment of chapter 7 trustee; *Pongetti v. Lee (In re Bingham Sys., Inc.),* 139 B.R. 809, 812 (Bankr.N.D.Miss.1991).

12. The Second Circuit's holding in *Repass* appears at first blush to be all encompassing, yet I am not convinced that it is intended to be of universal application. As Jewelmasters correctly remarks, statutes of limitations are statutes of

repose. *Sir Speedy, Inc. v. L & P Graphics, Inc.,* 957 F.2d 1033, 1038 (2d Cir.1992). Generally a reorganization case is closed when all of the claims disputes and adversary proceedings have been resolved. Here, in contrast, the Plan is crafted to provide that the case will remain open not only until the disputed claims and actions are resolved but until the estate's remaining realty is disposed of. The Plan contemplates that some of the real estate could be held by the postconfirmation asset administrator for years, until the market in which each parcel is contained permits sale at a reasonable price. One could certainly argue that such a nebulous limitations period does not provide any repose and that there must be some limit on the estate's ability to bring preference actions. *See Brin–Mont, supra,* 154 B.R. at 907 (suggesting that laches is not warranted for trustees' avoidance actions given that for trustees there is a relatively short statute of limitations but that laches may be applicable for debtors in possession given that for them there is a potentially lengthy and nebulous statute of limitations).

is not warranted. Jewelmasters has not made a sufficient showing of Bonwit's unreasonable delay in commencing this action nor any resulting prejudice to Jewelmasters which would warrant the doctrine's application. *Prudential Lines v. Exxon Corp.*, 704 F.2d 59, 65 (2d Cir.1983) (citing *Russell v. Todd*, 309 U.S. 280, 287, 60 S.Ct. 527, 531, 84 L.Ed. 754 (1940)); *Alithochrome*, 53 B.R. at 906. Jewelmasters argues that Bonwit has sat on its rights for years in that this action could have been brought soon after the chapter 11 petition was filed. In advancing this argument, Jewelmasters completely ignores its own entry into four tolling stipulations with the debtors permitting the debtors to defer commencing the litigation. Moreover, Bonwit first attempted to initiate this action two days before the last stipulation expired.[13] Although there was a two month delay between the time I dismissed the first complaint and the Committee filed the revised one, that delay is reasonable considering the substitution of new counsel and the revisions made to the complaint.

In light of Jewelmasters' willing entry into four tolling stipulations, its contention that it has been prejudiced by the departure of key accounting personnel is simply not enough to support a finding that laches is appropriate. Jewelmasters cannot be heard now to complain when the only delay that took place after it refused a further stipulation was both short and reasonable. Because Jewelmasters has failed to make the necessary showing of unreasonable delay coupled with prejudice, I cannot grant its request to invoke laches.

## IV.

For the foregoing reasons, Jewelmasters' motion to dismiss is denied. SETTLE ORDER consistent with this decision.

---

13. Jewelmasters incorrectly focuses on the date of service as the date this action was commenced. Pursuant to Fed.R.Bankr.P. 7003, the action was commenced by the filing of the complaint with the court. Thereafter, Bonwit had 120 days to serve the summons and complaint. Fed.R.Bankr.P. 7004(a).